229 So.2d 568 (1969)
Charles W. WALTON
v.
CHRYSLER MOTOR CORP. and Chrysler Corp.
No. 45535.
Supreme Court of Mississippi.
December 15, 1969.
Rehearing Denied January 12, 1970.
Joe H. Daniel, John M. Roach, John B. Clark, Daniel, Coker, Horton & Bell, Jackson, for appellant.
B.L. Riddick, Watkins & Eager, William F. Goodman, Jr., Jackson, for appellees.
*569 RODGERS, Justice.
This is a products liability case in which the injured plaintiff sues the driver of the automobile which collided with the automobile operated by the plaintiff, and sues the national distributor and manufacturer of the automobile driven by plaintiff. Charles W. Walton was the plaintiff and is the appellant here. Wade E. Morrison operated the automobile which collided with the vehicle driven by the plaintiff. Chrysler Corporation was the manufacturer of the vehicle operated by the plaintiff and The Chrysler Motor Corporation is the national distributor for and subsidiary of the manufacturer.
When the plaintiff concluded his direct testimony, the plaintiff announced a settlement with Wade E. Morrison. The manufacturer and distributor moved the court for a directed verdict. The trial court sustained the motion of the distributor, but overruled the motion of the manufacturer. Whereupon, testimony was offered by the manufacturer to show that the accident was caused by the defendant Wade E. Morrison; that the automobile seat alleged to have been broken during the collision was a seat designed for ordinary use of the automobile, and was not designed to withstand the shock of a highway collision. Testimony was given as to the weight necessary to break the "bumper" on the seat alleged to have been broken in the collision.
The facts upon which this case is based are relatively simple. The plaintiff, Charles W. Walton, was operating a 1963 Plymouth Valiant, two-door automobile, in a westerly direction on West Capitol Street in Jackson, Mississippi. As he approached the intersection of North Prentiss Street, the traffic came to a stop. The plaintiff stopped, whereupon Wade E. Morrison drove his 1955 Mercury into the rear of the plaintiff's automobile with considerable force. The plaintiff was propelled backward and forward so that he was flung against the back of the seat. A screw which held a nylon plate onto the seat or *570 back rest of the automobile driven by plaintiff was broken and sheared causing the back of the seat to collapse backward and flop down, so that the plaintiff was propelled in a prone position and then flung forward against the steering wheel of his automobile. The plaintiff was seriously injured. The plaintiff contends here that his injury was caused by the defendant Wade E. Morrison, and also as a result of the joint negligence of the manufacturer in "improperly designing and in wrongfully, negligently and improperly manufacturing an automobile seat which was not reasonably safe for its intended use."
There is no real issue as to the facts in this case; the issue here is a question of law. In view of our conclusion as to the issue, we do not deem it necessary to study nor to discuss whether or not the Chrysler Motor Corporation would be liable in a proper case where knowledge of an alleged defect is shown in evidence.
The issue to be determined here is whether or not this Court will extend the strict liability rule to include a case where the defect in the article sold did not cause the initial accident, but did, when combined with the force put in motion by the accident, add to, or become a part of the cause of injury to a human being, so as to subject manufacturer to liability.
In the instant case, it is clear that the alleged defect in the automobile did not cause the accident. It is equally clear, however, that the weakness of the bumper and screw did, or could have, added to the seriousness of the plaintiff's injury. The driver of the automobile that crashed into the rear of the automobile operated by the plaintiff caused the accident. Nevertheless, plaintiff believes and charges that he would not have been seriously injured if the back of the automobile seat in which he was riding had not broken so as to let the back flop to a prone position.
The defendant automobile manufacturer contends that  although it recognizes the strict liability rule making the manufacturer liable to persons injured by defects in the automobiles made by it  nevertheless, it is not liable for injuries resulting from highway collisions caused by other automobile drivers.
The appellant points out that this Court has adopted the strict liability rule recommended by the American Law Institute's Restatement of Torts with reference to the manufacturer's liability for defective products. He cites State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966), and Ford Motor Company v. Cockrell, 211 So.2d 833 (Miss. 1968).
The appellant cites several recent cases which tend to establish the theory of liability for a defect which did not cause the initial accident but which added to the seriousness of the injury. He cites Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968).
In the Larsen case, the plaintiff was injured in a "head-on" automobile collision. The steering mechanism was pushed backward into the plaintiff's head. The plaintiff contended that he would not have been as seriously injured if the steering mechanism had not been thrust backward as the result of a defectively designed automobile. Summary judgment was granted the defendant. On appeal the court held that the plaintiff had stated a cause of action and reversed the case for a new trial. The court in that case pointed out:
"General Motors contends that it has no duty to produce a vehicle in which it is safe to collide or which is accident-proof or incapable of injurious misuse. It views its duty as extending only to producing a vehicle that is reasonably fit for its intended use or for the purpose for which it was made and that is free from hidden defects; and that the intended use of a vehicle and the purpose for which it is manufactured do not include its participation in head-on collisions or any other type of impact, regardless of the manufacturer's ability to *571 foresee that such collisions may occur. * * *" (391 F.2d at 498)
The court then said that:
"There is a line of cases directly supporting General Motors' contention that negligent design of an automobile is not actionable, where the alleged defective design is not a causative factor in the accident. The latest leading case on this point is Evans v. General Motors Corporation, 359 F.2d 822 (7 Cir.1966), cert. denied, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966). * * *" (391 F.2d at 498)
The court, however, held:
"We think the `intended use' construction urged by General Motors is much too narrow and unrealistic. Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called `second collision' of the passenger with the interior part of the automobile, all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable. The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art." (391 F.2d at 502)
In the case of Noonan v. Buick Company, 211 So.2d 54 (Fla.App. 1968), the plaintiff alleged that his three-year-old son grabbed the steering wheel of his Buick automobile as he drove along the highway; that plaintiff in an effort to adjust quickly turned the steering wheel to avoid a skid; that the driver's seat collapsed catapulting him forward so as to strike his head against the frame of the car causing him to become unconscious and causing the automobile to overturn, seriously injuring the plaintiff. The trial court dismissed the case. On appeal that court said:
"The complaint alleges negligent manufacture which the appellee ought to have foreseen might cause injury in an emergency situation. A jury could find that the appellant's injury resulted from appellee's alleged negligence and not the act which caused the emergency situation.
"The complaint alleges facts which when accepted as true and when aided by reasonable inferences are sufficient to require an answer. * * *" (211 So.2d at 56)
One of the cases most favorable to the contention of the appellant is the case of Mickle v. Blackmon, 166 S.E.2d 173 (S.C. 1969). In that case the plaintiff was injured in an automobile accident and brought suit against the automobile manufacturer, along with other defendants. The jury returned a judgment in favor of the plaintiff. The plaintiff had contended that the automobile manufacturer was negligent in the design and placement of the gear-shift lever, which without an adequate protective wall or knob, created an unreasonable risk of injury to a passenger upon the happening of a collision. In fact, the protective ball did shatter on impact and permitted plaintiff's body to become impaled on the spear-like lever. The trial court granted a judgment for the manufacturer notwithstanding *572 the verdict of the jury and the plaintiff appealed.
The Supreme Court of South Carolina reversed the judgment of the trial court. The court in its opinion cited Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968), Ford Motor Co. v. Zahn, 265 F.2d 729 (8th Cir.1959), and Evans v. General Motors Corp., 359 F.2d 822 (7th Cir.1966). Thus the Supreme Court of South Carolina chose to follow the reasoning set out in the Larsen case.
The appellant in the instant case contends that it is the duty of the manufacturer to foresee accidents, and to design its vehicles so as to reduce the possibility of injury to the users of their products. Stating the argument differently: the manufactured product must be reasonably fit for its intended use, free of hidden defects that could render the product unsafe for highway use. It is then argued that it was well known to the manufacturer that automobiles will be "bumped" or "rammed from the rear" and that many persons are being killed, hurt and injured by accidents similar to the accident here involved, and that the manufacturer could reasonably foresee that the plaintiff would be injured as a result of the dangerous and faulty design of its product. It was therefore liable to the plaintiff, although the defect in the design of the automobile did not cause the accident, but added to the seriousness or gravity of the injury.
There is no contention in the instant case that the automobile driven by the plaintiff was not safe for its ordinarily intended use, or that the "bumper" on the seat was not sufficiently strong for ordinary highway use of the automobile at the time it left the factory.
We have set out the contention of the plaintiff in detail, together with the authorities relied upon, because we are confronted with a choice of paths to be followed in the future by this Court.
Our study of the authorities (cases, texts and law articles) has led us to the conclusion that the great weight of authority is against the theory presented by the appellant. See Evans v. General Motors Corp., 359 F.2d 822 (7th Cir.1966), cert. denied 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966); Willis v. Chrysler Corp., 264 F. Supp. 1010 (S.D.Tex. 1967); Walz v. Erie-Lackawanna R. Co., CCH Prod.Liab.Rptr., Par. 5722 (D.C.N.D.Ind. 1967); Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950); Shumard v. General Motors Corp., 270 F. Supp. 311 (S.D.Ohio 1967); Schemel v. General Motors Corp., 261 F. Supp. 134 (S.D.Ind. 1966), aff'd 384 F.2d 802 (7th Cir.1967); Kahn v. Chrysler Corp., 221 F. Supp. 677 (S.D.Tex. 1963); Hatch v. Ford Motor Co., 163 Cal. App.2d 393, 329 P.2d 605 (1958); Poore v. Edgar Bros. Co., 33 Cal. App.2d 6, 90 P.2d 808 (1939); Ein v. Goodyear Tire & Rubber Co., 173 F. Supp. 497 (N.D.Ind. 1959); Anno: 78 A.L.R.2d 476 (1961); 8 Am.Jur.2d, § 646, page 205 (1963).
We are of the opinion that the automobile manufacturer is not an insurer against the possibility of accidental injury arising out of the use of its product. Muncy v. General Motors Corp., 357 S.W.2d 430 (Ct.Civ.App.Tex. 1962); Evans v. General Motors Corp., 359 F.2d 822 (7th Cir.1966); Brown v. General Motors Corp., 355 F.2d 814 (4th Cir.1966); United States Rubber Co. v. Bauer, 319 F.2d 463 (8th Cir.1963); Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950); 8 Am.Jur.2d, § 646, page 205 (1963).
Although it is true that the manufacturer is liable for defects in its product which cause injury arising out of the intended use for which the product is manufactured  we are, nevertheless, of the opinion, and so hold, that an automobile manufacturer is not liable for injury arising from defects in the automobile which did not cause or contribute to the cause of the accident, such as a rear-end collision. This is true although such accident may have been foreseeable as a misuse of the manufactured product. Evans v. General Motors *573 Corp., supra; Compare Simpson Timber Co. v. Parks, 369 F.2d 324 (9th Cir.1966).
It has been said that in all negligence cases the plaintiff must establish: (1) that he was injured as a result of defendant's conduct (causal relationship); (2) that he was protected under some rule of law against this conduct (duty); (3) that defendant's conduct violated this duty; (4) plaintiff suffered loss (damages). Green, Foreseeability In Negligence Law, 61 Colum.L.Rev. 1401 (1961). The strict liability rule for products liability cases adopted by this Court eliminates the necessity to show negligence in the manufacture of the product where it is shown that the product left the hands of the manufacturer in a defective condition, but this rule does not eliminate the requirement that, even where there is a defect in the product, that there must be some duty owed to the plaintiff with regard to the defect, growing out of the intended normal use for which the product was manufactured.
The adoption of the legal theory propounded by the plaintiff would require this Court to establish by judicial order a new duty not contemplated by common law and not sanctioned by case history. What standards of duty or reasonableness of design would we require, and how could the judiciary police the industry? These questions are unanswerable. The courts have no machinery to inspect and police industry so as to require compliance with detailed design of products.
In the future there may be some legal requirements for uniform automobile design imposed upon the manufacturer, but we are of the opinion that such requirements should be outlined in detail by the legislative branch of the government. For example, in modern transportation the likelihood of collision could prompt the legislature to require that all automobiles operated upon the highways of this state be provided with bumpers of a certain weight and strength, and that they be placed a certain distance from the ground. However, to state such a requirement makes it clear that this Court could not legislate such a duty and fix such standards of requirement.
We are of the opinion, therefore, that the judgment of the trial court was proper and should be, and is hereby, affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and SMITH, JJ., concur.