**Lucile S. RIVERS, Executrix of the Estate of Richard Albert Rivers, deceased, Plaintiff,**

v.

**GREAT DANE TRAILERS, INC. and Ryder Truck Rental, Inc., Defendants.**

**RYDER TRUCK RENTAL, INC., Cross–Claimant,**

v.

**GREAT DANE TRAILERS, INC., Cross–Defendant.**

No. CV–92–A–578–S.

United States District Court, M.D. Alabama, S.D.

March 26, 1993.

L. Andrew Hollis, Jr., Jeffrey C. Kirby, Birmingham, AL, Rufus R. Smith, Jr., Dothan, AL, for plaintiff.

Alan C. Livingston, Dothan, AL, Oakley W. Melton, Jr., James E. Williams, Richard A. Ball, Jr., Montgomery, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

This cause is now before the court on the Motion For Summary Judgment Or, In The Alternative, Motion For Partial Summary Judgment on the Issue of Punitive Damages filed by defendant Great Dane Trailers, Inc. ("Great Dane") on January 4, 1993, and the Motion For Summary Judgment filed by defendant Ryder Truck Rental, Inc., ("Ryder") also filed January 4, 1993. The Motions For Summary Judgment were argued before the court on February 18, 1993.

For the following reasons, the defendants' motions for summary judgment are due to be granted in part and denied in part.

### I. FACTS

Plaintiff Lucile Rivers is a resident citizen of Houston County, Alabama, and has been appointed Executrix, in the State of Alabama, of the Estate of Richard Albert Rivers, who was a resident citizen of the State of Alabama at the time of his death. Defendant Great Dane is a corporation incorporated under the laws of the State of Georgia, and having its principal place of business in Georgia.

Defendant Ryder is a corporation incorporated under the laws of the State of Florida, and having its principal place of business in Florida.

Jurisdiction is based upon diversity of citizenship between the plaintiff and the defendants, pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $50,000. Accordingly, the court has jurisdiction to hear this matter, and venue is proper. Because the accident occurred in Jackson County, Florida, the applicable law is that of the State of Florida.

On the afternoon of November 12, 1991, Dudley Wade Floyd, an employee of Columbia Yeast Company, was driving a tractor-trailer rig northbound on Florida State Road No. 75 (U.S. 231) en route from Orlando, Florida, to Headland, Alabama. At approximately 3:55 p.m. on that date, Mr. Floyd had brought the tractor-trailer rig to a complete stop behind two automobiles which had pre-

viously stopped in the northbound lane of State Road No. 75, approximately 1.3 miles south of Campbellton, Jackson County, Florida. The lead car had stopped in the northbound lane in order to allow several oncoming southbound vehicles to pass before turning left into a retail establishment.

Also on November 12, 1991, Plaintiff Rivers' decedent, Richard Albert Rivers, was traveling in the northbound lane of State Road No. 75, driving a white 1982 Datsun pickup truck. Mr. Rivers' pickup truck was traveling behind Mr. Floyd's tractor-trailer rig. After the tractor-trailer rig had been lawfully stopped in the northbound lane for approximately one minute [1], Mr. Rivers' vehicle crashed into the rear of the trailer portion of the rig. Mr. Rivers suffered fatal injuries in the collision.

The trailer involved in the collision was manufactured by Great Dane, and sold to Ryder Truck Rental in November 1990. Ryder leased the trailer to Columbia Yeast Company. The trailer was manufactured to include a step bumper on the rear.

The force of the impact (1) sheared the step bumper from its welded construction with the trailer frame, (2) broke the left center spring hanger between the axles of the trailer, (3) pushed the left rear axle and tires approximately six inches forward, (4) pushed the left rear mud guard and support approximately eight inches forward and three inches down from their original locations on the trailer, and (5) severely twisted the left rear frame of the trailer.

The pickup truck which was driven by plaintiff's decedent was severely twisted and damaged from the front bumper to the passenger cab. The pickup did not stop after the initial impact, but rather continued underneath the trailer until the back corner of the trailer smashed the pickup's windshield and struck Mr. Rivers's head. It was this second impact of the trailer striking Mr.

Rivers's head produced the fatal injuries.

The speed at which Mr. Rivers' vehicle was traveling at the time of the impact is disputed by the parties [2]. Viewing the evidence in the light most favorable to the non-moving party, in this case the plaintiff, the court assumes, for the purpose of summary judgment, that the speed at the time of impact was approximately seventeen or eighteen miles per hour.

At the time of the accident, the weather was clear and sunny, with seven miles visibility. State Road No. 75 is straight and flat for a considerable distance both north and south of the accident scene. There was nothing obstructing Mr. Rivers' vision of the stopped tractor-trailer rig.

Plaintiff brought this action against Great Dane asserting that the trailer involved in the collision was defective and that Great Dane negligently designed and manufactured the trailer. Plaintiff alleges that the trailer should have been equipped with a step bumper which would prevent underride in the event of a rear-end collision. Specifically, Plaintiff maintains that the step bumper on the rear of the trailer should have prevented the pickup truck from continuing under the trailer after impacting with the bumper. Plaintiff further asserts that the trailer was negligently manufactured because the bumper failed to meet Great Dane's own specifications.[3]

Plaintiff also makes a claim based upon strict liability in tort. This claim asserts that the step bumper on the rear of the vehicle was defective and created an unreasonably dangerous and unsafe condition when it was allowed to shear off and consequently failed to prevent the pickup from continuing under the trailer after impact.

---

1. It is undisputed that driver of the tractor-trailer rig, Mr. Floyd, employed his emergency hazard lights.

2. The speed of the plaintiff decedent's pickup truck at the time of impact is the only factual issue concerning the facts of the accident which is disputed in the case. Plaintiff asserts the speed at impact was 17–18 mph. Defendant maintains the speed at impact was 43–48 mph. Both parties have submitted expert testimony in support of their contentions.

3. Great Dane designed the step bumper to withstand a force of up to 41,000 lbs.

Plaintiff seeks punitive damages as well as compensatory damages, on both the negligence and the strict liability claims.

## II. STANDARD OF REVIEW FOR GRANTING SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the moving party, in a case in which the ultimate burden of persuasion at trial rests on him, by showing that undisputed evidence entitles him to judgment as a matter of law as to the claim on which he has the burden. Where the burden of proof is on the non-moving party, this standard can be met either by submitting affirmative evidence negating an essential element of the non-movant's claim, or by demonstrating that the non-moving party's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of an essential element to her claims, and on which she bears the burden of proof at trial. *Id.* To meet this burden, the non-moving party cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. *Fed.R.Civ.P.* 56(e).

It is the substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). *See also De-Long Equipment Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499 (11th Cir.1989). All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the non-moving party. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). *See also Matsushita Electric Industrial Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983).

Thus, the court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried, and if not, whether the moving party is entitled to a judgment as a matter of law. *See Dominick v. Dixie National Life Insurance Company*, 809 F.2d 1559 (11th Cir.1987).

Because this matter is before the court on defendants' motions for summary judgment, they must show that there is no issue of material fact and that they are entitled to a judgment as a matter of law. *Fed.R.Civ.P.* 56(c). The burden then shifts to plaintiff, as the non-moving party, to make a showing sufficient to establish the existence of facts supporting the essential elements to her claims, and on which she bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In satisfying this burden, plaintiff may not rest upon the mere allegations or denials of her pleadings, but must, by affidavits or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. *Fed. R.Civ.P.* 56(e); *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991).

## III. ANALYSIS

Plaintiff has asserted two causes of action against the defendants. Plaintiff first maintains a negligence action against both Great Dane and Ryder claiming that the trailer was negligently designed or negligently manufactured because it contained a step bumper which failed to prevent damage from underride in a rear-end collision. Plaintiff also asserts claims against both defendants based upon strict liability.[4]

---

4. Florida has adopted *Restatement (Second) of Torts,* § 402A (1965). *See Sowell v. American*

*Cyanamid Co.,* 888 F.2d 802 (11th Cir.1989).

## A. Negligence

The threshold question in a negligence action is whether or not the defendant owed a duty of care to the plaintiff. Here, that question is framed as follows: Whether or not the defendants, Great Dane and Ryder, owed a duty of care to provide a step bumper on the rear of the trailer which would sufficiently prevent injury, caused by underriding, to a plaintiff who collides with the trailer from behind, where that trailer is lawfully stopped and where the driver of the tractor-trailer rig did not act in a negligent manner.

### 1. Defendant Great Dane

■ Whether or not certain acts constitute negligence is usually a question of fact for a jury. First, however, it must be established that a duty is owed by the defendant to the plaintiff. If no duty is owed, there can be no negligence. Whether a duty exists is a question of law for the court. *McCain v. Florida Power Corp.,* 593 So.2d 500, 502 (Fla.1992); *Florida Power & Light Co. v. Lively,* 465 So.2d 1270, 1273 (Fla.App.1985), rev. denied, 476 So.2d 674 (Fla.1985).

■ Plaintiff asserts that defendant Great Dane owed the plaintiff's decedent a duty of care to design, manufacture, and attach a reasonably safe step bumper to the rear of the trailer that it manufactured and sold to defendant Ryder. Plaintiff further asserts that defendant Great Dane breached that duty. The evidence viewed in the light most favorable to the plaintiff tends to show that the pickup truck driven by the plaintiff's decedent crashed into the rear of the trailer at a speed of approximately seventeen to eighteen miles per hour at the point of impact. The evidence is undisputed that the step bumper failed to prevent the pickup from underriding the trailer, and that the impact of the rear of the trailer with the cab of the pickup truck produced the fatal injuries to plaintiff's decedent.[5]

Defendant Great Dane avers that despite the truth of these facts, it owed no duty to persons such as plaintiff's decedent who crash into the rear of its trailers. Great Dane maintains that there is no duty to design, manufacture and sell a trailer which is "accident-proof"—that is, able to protect "invaders" or "trespassers" who run into the trailer and later seek legal redress. As to this question, the court is governed by Florida law.

The plaintiff has cited no Florida case holding that a manufacturer of a product has a common law duty to design or manufacture the product so that is reasonably safe for a person to collide with it even if it is reasonably foreseeable that drivers of other vehicles may do that.

Courts of other states have held that no such duty exists. *See, Mieher v. Brown,* 54 Ill.2d 539, 301 N.E.2d 307 (1973) (motorist collided with rear of truck which had no bumper); *Hatch v. Ford Motor Co.,* 163 Cal. App.2d 393, 329 P.2d 605 (1958) ("The vehicle in question here, in the condition in which it was by the complaint alleged to be, was safe to park and could cause no harm except to one whose own acts or the acts of some third person caused him to collide with it. Such a risk is not one which the defendant was required to anticipate or to guard against."); *Kahn v. Chrysler Corp.,* 221 F.Supp. 677 (S.D.Tex.1963) ("The duty of the automobile manufacturer extends to the ordinary use of the vehicle, and may even be such as to cover certain situations when the automobile is being negligently used. But the manufacturer has no obligation to so design his automobile that it will be safe for a child to ride his bicycle into it while the car is parked.")

The same considerations that determine the question of duty in the design context would apply with equal force in the context of manufacture. The court agrees with the holdings of other courts cited above and, in the absence of citation to contrary authority, feels that the Florida courts would hold likewise.

This court finds no common law duty for a manufacturer to design or manufacture a trailer which would protect a person who runs another vehicle into it from the rear. Therefore, Defendant Great Dane's Motion

---

5. Plaintiff also maintains that based upon the severity of the head injuries, and the lack of severity of injuries below the decedent's head and neck, that plaintiff would have survived the collision but for the failure of the bumper to prevent decedent's pickup truck from underriding.

for Summary Judgment is due to be granted as it applies to the issue of negligence.

### 2. Defendant Ryder

■ The same analysis which was applied to defendant Great Dane may be applied to defendant Ryder. There is no common law duty on the lessor of a trailer to protect persons who may collide with the trailer from the rear.[6]

Therefore, Defendant Ryder's Motion For Summary Judgment is due to be granted as it applies to the issue of negligence.

### B. Strict Liability

The plaintiff also sued under a theory of strict liability. Because the accident occurred in the state of Florida, the Court must apply the laws of the State of Florida. Florida provides a cause of action based on strict liability, having adopted the *Restatement (Second) of Torts*, § 402A (1965)[7]. See *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla.1976).

■ The threshold issue for the Court to decide is whether the plaintiff can show that she is one who was meant to be protected by the doctrine of strict liability.

From a literal reading of the language of the *Restatement*, it would appear that the doctrine of strict liability is limited to users and consumers of the defective product. Richard Rivers, the plaintiff's decedent, could hardly be considered a "user" of the product. The product involved is not the bumper, but the trailer itself. Within the normal understanding of the word, the trailer was being "used" by Columbia Yeast and its driver when Richard Rivers collided with it from the rear. Clearly, Rivers was not a consumer of the trailer. Therefore, it might appear at first that the doctrine of strict liability

would not be applicable to the facts and circumstances of this case.

The Court, however, must seek to determine whether the law of Florida would apply strict liability to this case, and in doing so, the court is bound by the definition of strict liability, under *Restatement (Second) of Torts*, § 402A (1965), as interpreted by the Florida Supreme Court.

Plaintiff contends that Florida law extends strict liability to "bystanders" and that this covers the plaintiff. Defendants contend that the plaintiff's decedent was not a "bystander", because he actively ran his vehicle into the parked trailer. They further contend that even if he were considered a bystander, strict liability extends only to "innocent" bystanders and that the decedent was not innocent, because of his wrongful conduct.

Defendants' contentions are not consistent with the holdings in the case where the Supreme Court of Florida adopted strict liability, *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976).

In *West*, a woman was crossing a street at an intersection when she was hit and killed by a grader. The personal representative of the decedent's estate brought suit in a Florida federal district court against the grader manufacturer claiming that negligent design of the grader caused the accident. The trial court submitted the case to the jury on, *inter alia*, a theory of strict liability in tort and on a defense of contributory negligence under Florida's apportionment method of comparative negligence. Following a verdict on special interrogatories finding Caterpillar liable on strict liability and the plaintiff guilty of contributory negligence to a degree of 35%,

---

6. A duty would exist, of course, on the part of the lessee of the trailer, Columbia Yeast, for its driver not to negligently operate the trailer so as to cause a collision. It is undisputed, however, that the driver of the truck was in no way negligent. He was lawfully stopped, and had applied his emergency hazard lights to warn drivers behind him that he was stopped.

7. § 402A Special Liability of Seller of Product for Physical Harm to User or Consumer.
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability

for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

the court held that contributory negligence was not a defense to strict liability and entered a verdict for the full amount of damages.

On appeal, the 5th Circuit Court of Appeals certified certain questions to the Florida Supreme Court, including

1. (a) Under Florida law, may a manufacturer be held liable under the theory of strict liability in tort, as distinguished from breach of implied warranty of merchantability, for injury to a user of the product or a bystander?

(b) If the answer to 1(a) is in the affirmative, what type of conduct by the injured party would create a defense of contributory or comparative negligence?

(1) In particular, under principles of Florida law, would lack of ordinary due care, as found by the jury in this case, constitute a defense to strict tort liability?

The court adopted strict liability as set out in § 402A of the *Restatement (Second) of Torts*, held that it extended to bystanders as well as to users and consumers, and held that contributory negligence, or lack of ordinary due care, was a defense to strict liability to the extent that it could be considered in the comparative negligence context.

If "bystander" were intended to be limited to a person who is passively injured, as the usual use of the word would seem to imply, the decedent in *West*, who walked into the path of the grader, would have been no more a bystander than the decedent here. This court, therefore, takes the term to include any non-user who is directly injured. Furthermore, although the term "innocent bystander" was used twice in the opinion, the word "innocent" seems to have been merely a gratuitous adjective, not intended to actually limit the type of bystanders who are protected. To take it otherwise would be inconsistent with the holding in the case, which extended strict liability to Ms. West, who was found by the jury to have been guilty of contributory negligence. Therefore, Richard Albert Rivers was a bystander.

The following statement of Florida law as set out in *West* governs this case:

We therefore hold that a manufacturer is strictly liable in tort when an article he places on the market knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. This doctrine of strict liability applies when harm befalls a foreseeable bystander who comes within range of the danger.

An action sounding in strict liability requires the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury. *Edward M. Chadbourne, Inc. v. Vaughn*, 491 So.2d 551 (Fla.1986), citing *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 86 (Fla. 1976).

■ It is not disputed that the trailer manufactured by Defendant Great Dane was a "product" that was "produced by a manufacturer". However, the parties dispute the third element. Plaintiff appears to have conceded that no reasonable alternative bumper existed in this country at the time of the accident, thus abandoning a claim of design defect. Plaintiff alleges, however, that the step bumper was designed to prevent underriding when a rear-end collision occurred with a force of up to 41,000 pounds. Viewing the facts in the light most favorable to the plaintiff, the force at impact would have been significantly less than 41,000 pounds. Accordingly, plaintiff may be able to establish that the trailer was defectively manufactured because it failed to meet the design specifications that Defendant Great Dane implemented, and this made it unreasonably dangerous. There is also a factual dispute as to proximate cause between the manufacturing defect and the injuries suffered by the plaintiff's decedent. Plaintiff claims that the manufacturing defect which caused the step bumper to fail to prevent underriding caused the injuries to the head and neck of the plaintiff's decedent. It was these injuries which proved to be fatal.

The actions of the plaintiff's decedent in this case do not prevent plaintiff from bringing a suit founded in strict liability in tort. Those actions merely provide the defendants with a defense to the strict liability claim.

■ Consequently, there are material factual issues in dispute. These include wheth-

er the decedent was a foreseeable bystander, whether the trailer was sold or leased in a defective condition unreasonably dangerous to him, whether the death was proximately caused by a defect, and whether the decedent was guilty of contributory negligence.

### 1. Defendant Great Dane

For the reasons stated above, Defendant Great Dane's Motion For Summary Judgment is due to be denied as it applies to the claim of strict liability in tort.

### 2. Defendant Ryder

■ A claim of strict liability in tort may be brought against the lessor of a defective product, as well as the manufacturer. *See Amoroso v. Samuel Friedland Family Enterprise,* 604 So.2d 827, 834 (Fla.App. D4 1992). Though the defendant owner/lessor (Ryder) has filed a cross-claim against the defendant manufacturer (Great Dane) for indemnification, and any damages owed by Defendant Ryder may ultimately be reimbursed by Defendant Great Dane, if such damages are recovered, defendant Ryder's possible indemnification does not eliminate the plaintiff's claim. Therefore, since Defendant Great Dane's Motion For Summary Judgment is due to be denied on the issue of strict liability in tort, Defendant Ryder's Motion For Summary Judgment is similarly due to be denied on the issue of strict liability in tort.

### C. Punitive Damages

■ Defendant Great Dane filed a Motion For Partial Summary Judgment on the issue of punitive damages, as an alternative to its Motion For Summary Judgment. Defendant Great Dane maintains that summary judgment should be granted on the issue of punitive damages because the plaintiff will be unable to demonstrate the requisite degree of recklessness necessary to recover punitive damages. *See Chrysler Corp. v. Wolmer,* 499 So.2d 823 (Fla.1986); *Jeep Corp. v. Walker,* 528 So.2d 1203, 1206 (Fla.App.1988) (Under Florida law, the plaintiff must prove that defendant acted "with a reckless disregard for human life equivalent to manslaughter").

Plaintiff relies on several cases involving asbestos litigation. *See Johns–Manville Sales Corp. v. Janssens,* 463 So.2d 242 (Fla.

App. D1 1984) *review denied,* 467 So.2d 999 (Fla.1985); *Baione v. Owens–Illinois, Inc.,* 599 So.2d 1377 (Fla.App. D2 1992). While, on the basis of evidence presently before the court, it appears that the cases relied on by plaintiff are inapposite to the instant case for reasons similar to those discussed in *Wolmer,* 499 So.2d at 825, 826, and while the evidence suggests that allowance of recovery of punitive damages will be extremely unlikely, the court feels that it would be premature to grant summary judgment on the issue of punitive damages in this case. The court will defer granting summary judgment, and instead address this issue upon a motion for judgment as a matter of law, when raised at the close of evidence.

Therefore, Defendant Great Dane's Motion For Partial Summary Judgment on the issue of the recoverability of punitive damages is due to be denied.

## IV. CONCLUSION

Neither Defendant Ryder nor Defendant Great Dane owed a common law duty to plaintiff's decedent to design, manufacture, or sell a trailer which was reasonably safe to run into from the rear. Therefore, neither can be held liable to plaintiff under a claim of negligence.

Under Florida law, however, strict liability extends beyond consumers, owners, and users, to include bystanders, and, therefore, plaintiff has established a cause of action under a theory of strict liability. Thus, defendants' motions for summary judgment are due to be denied as they apply to the issue of strict liability.

The Court defers judgment on the issue of the recoverability of punitive damages at this time. Accordingly, Defendant Great Dane's Motion For Partial Summary Judgment is due to be denied.

Consequently, defendants' Motions For Summary Judgment are due to be GRANTED IN PART and DENIED IN PART.

An order will be entered this day in accordance with this opinion.

***ORDER***

In accordance with the Memorandum Opinion entered by the court on this day, it is hereby ORDERED as follows:

Defendant Great Dane's Motion For Summary Judgment as it applies to the claim of negligence is GRANTED;

Defendant Ryder's Motion For Summary Judgment as it applies to the claim of negligence is GRANTED;

Defendant Great Dane's Motion For Summary Judgment as it applies to the claim of strict liability in tort is DENIED;

Defendant Ryder's Motion For Summary Judgment as it applies to the claim of strict liability in tort is DENIED;

Defendant Great Dane's Motion For Partial Summary Judgment as to the applicability of punitive damages is DENIED.